# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| REBECCA SMITH and CHRISTINE M. GHANIM, individually and on behalf of all others similarly situated,<br><br>                Plaintiffs,<br><br>v.<br><br>UNITEDHEALTH GROUP INC., UNITED HEALTHCARE SERVICES, INC., UNITED HEALTHCARE INSURANCE COMPANY, UNITED MEDICAL RESOURCES, UNITED HEALTHCARE SERVICE LLC, and DOE Defendants 1-10,<br><br>                Defendants. | No. 22-cv-01658 NEB-DJF |

## DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

| | |
|---|---|
| Stephen Lucke (#154210)<br>Michelle S. Grant (#311170)<br>**DORSEY & WHITNEY LLP**<br>50 South Sixth Street, Suite 1500<br>Minneapolis, MN 55402<br>lucke.steve@dorsey.com<br>grant.michelle@dorsey.com<br>(612) 340-2600 | Gregory F. Jacob (*pro hac vice*)<br>Brian D. Boyle (*pro hac vice*)<br>**O'MELVENY & MYERS LLP**<br>1625 Eye Street, NW<br>Washington, DC 20006<br>gjacob@omm.com<br>bboyle@omm.com<br>(202) 383-5300 |

*Attorneys for Defendants*
*UnitedHealth Group Inc.,*
*United HealthCare Services, Inc.,*
*United HealthCare Insurance Company,*
*United Medical Resources, and*
*United HealthCare Service LLC.*

# TABLE OF CONTENTS

Page

INTRODUCTION ..............................................................................................1

FACTS .................................................................................................................2

ARGUMENT ......................................................................................................3

    I.    PLAINTIFFS LACK STANDING .....................................................3

    II.    THE COMPLAINT DOES NOT ADEQUATELY ALLEGE THAT UNITED ACTED AS A FIDUCIARY WHEN APPLYING THE CHALLENGED OFFSET PROTOCOL ................9

        A.    The Discretion United Allegedly Exercises is not the Subject of the Complaint ..........................................................9

        B.    United is Not a Fiduciary as to the Decision to Employ Cross-Plan Offsetting Because the Practice Conformed to Specific Contract Terms and Could be Freely Rejected by Plan Sponsors ..................................................................12

    III.    THE COMPLAINT DOES NOT PLAUSIBLY ALLEGE ERISA VIOLATIONS ...............................................................14

i

**TABLE OF AUTHORITIES**

Page

**Cases**

*Cent. Valley Ag. Coop. v. Leonard*,
  986 F.3d 1082 ................................................................................................................ 12

*Fifth Third Bancorp v. Dudenhoeffer*,
  573 U.S. 409 (2014) ....................................................................................................... 12

*Haley v. Teachers Ins. & Annuity Ass'n*,
  17-CV-855 (JPO), 2018 WL 1585673 (S.D.N.Y. Mar. 28, 2018) ................................. 10

*In re SuperValu, Inc.*,
  870 F.3d 763 (8th Cir. 2017) ....................................................................................... 7, 8

*Leimkueler v. Am. United Life Ins. Co.*,
  713 F.3d 905 (7th Cir. 2013), *cert. denied*, 134 S. Ct. 1280 (2014) ....................... 10, 13

*Martin v. Feilen*,
  965 F.2d 660 (8th Cir. 1992) .......................................................................................... 13

*McCaffree Fin. Corp. v. Principal Life Ins. Co.*,
  811 F.3d 998 (8th Cir. 2016) ................................................................................. 3, 9, 10

*Mitchell v. Blue Cross Blue Shield of North Dakota*,
  953 F.3d 529 (8th Cir. 2020) ........................................................................................... 6

*Ojogwu v. Rodenburg Law Firm*,
  26 F.4th 457 (8th Cir. 2022) ............................................................................................ 4

*Pegram v. Herdrich*,
  530 U.S. 211 (2000) ................................................................................................... 9, 11

*Reich v. Lancaster*,
  55 F.3d 1034 (5th Cir. 1995) .......................................................................................... 14

*Rozo v. Principal Life Ins Co.*,
  949 F.3d 1071 (8th Cir. 2020) .................................................................................. 12, 13

*Rozo v. Principal Life Ins. Co.*,
  48 F.4th 589 (8th Cir. 2022) .......................................................................................... 15

*Ryan S. v. UnitedHealth Grp., Inc.*,
  No. 20-56310, 2022 WL 883743 (9th Cir. Mar. 24, 2022) ......................................... 3, 8

**TABLE OF AUTHORITIES**

Page

*Santomenno v. John Hancock Life Ins. Co.*,
  768 F.3d 284 (3d Cir. 2014) .................................................................................. 10, 13

*Scott v. UnitedHealth Group, Inc.*,
  540 F. Supp. 3d 857 (D. Minn. 2021) ............................................................................ 1

*Teets v. Great-W. Life & Annuity*,
  921 F.3d 1200 (10th Cir. 2019) .................................................................................... 13

*Thole v. U.S. Bank, N.A.*,
  140 S. Ct. 1615 (2020) ............................................................................................... 4, 5

*TransUnion LLC v. Ramirez*,
  141 S. Ct. 2214 (2021) ............................................................................................... 4, 7

*United States v. Am. Trucking Ass'ns*,
  310 U.S. 534 (1940) ...................................................................................................... 15

**INTRODUCTION**

The parties vehemently disagree about whether cross-plan offsetting is precluded by ERISA. But as Chief Judge Schiltz held in dismissing the complaint in *Scott v. UnitedHealth Group, Inc.*, 540 F. Supp. 3d 857, 865 (D. Minn. 2021), only a plaintiff who has actually been injured by the practice has Article III standing to challenge it. Plaintiffs' Opposition[1] is filled with conclusory language about "victims" who have allegedly been "injured" by offsets. But the facts alleged in the Complaint do not remotely support these conclusions. While the Opposition implies that United promised to pay $56,000 to plaintiffs' providers in all-cash benefits, Opp'n at 1, what the Complaint actually alleges is that the provider agreed that "[p]ayment of benefits, if any, is subject to all terms and conditions of the policy," AC ¶¶ 77-78, which expressly permitted claims to be paid through cancellation of a provider's identified overpayment debt—exactly the form of payment alleged here.

The Complaint further concedes that plaintiffs' providers were notified that United paid their claims in that form, yet the Complaint does not identify a single step the providers have taken in nearly two years to seek a duplicate payment in cash from plaintiffs. Indeed, the Complaint affirmatively pleads that billions of dollars of claims have been paid in precisely the same form without identifying a single instance in which

---

[1] The abbreviations used herein are those used in United's Memorandum of Law in Support of Defendants' Motion to Dismiss Amended Complaint, ECF 43 ("MTD"). "Complaint" or "AC" refers to the Amended Complaint, ECF 35, and Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss, ECF 49, is referred to as "Opposition" or "Opp'n."

a provider has ever pursued a patient for balances that United satisfied through debt cancellation. The contingent, completely theoretical chance that plaintiffs' providers might do so—after nearly two years of inaction—could not be farther from the allegations of concrete, actual, and imminent injury that Article III requires. Plaintiffs' mantric invocation of ephemeral "clouds" and "inherent" value merely reinforces that any risk of future harm is not substantial and, indeed, barely qualifies as remote.

Independent of their standing problems, plaintiffs accept that fiduciary status is a necessary prerequisite to all of their claims. But plaintiffs' list of areas in which United purportedly had discretion glaringly omits the only decision the Complaint actually challenges—the decision to enroll their plans in cross-plan offsetting. The Complaint makes clear that *that* decision was made by plaintiffs' plans: it concededly is included in the SPDs and ASAs, and the plans were expressly notified that "[i]t is up to each self-insured plan whether or not to participate" in cross-plan offsetting. Jacob Decl., Ex. A at 7 (ECF 44-1); AC ¶¶ 40-41.

## **FACTS**

The Court may accept as true the following facts alleged in the Complaint and the documents incorporated by reference therein:

- Plaintiffs' plans received the Disclosure, which states that "[i]t is up to each self-insured plan whether or not to participate" in cross-plan offsetting. Jacob Decl., Ex. A at 7; AC ¶¶ 32, 40-41. The Disclosure also sets forth United's cross-plan offsetting process. Jacob Decl., Ex. A at 2, 6-7.

- Plaintiffs' plans included language in their SPDs stating that they will participate in cross-plan offsetting and, in their contracts with United (the ASAs), they instructed United to do so. AC ¶¶ 27, 50; Stalinski Decl. Exs. A at 98-99, B at 83, C §12.9, D §A2 (ECF 45-1).

- In implementing cross-plan offsetting, United engages in a "uniform" practice, AC ¶ 104, which United applies "in an identical way." *Id.* ¶ 96.

- United notified the plaintiffs' providers of the identified overpayments and of their rights to appeal. *Id.* ¶¶ 83-84, 92-93; Stalinski Decl. Exs. L, M.

- United subsequently notified the providers that it paid plaintiffs' claims in whole or in part by canceling the previously identified overpayment debt. AC ¶¶ 84-85, 92-93; Stalinski Decl. Exs. F, H.

- The Complaint contains no allegation suggesting that either provider has communicated to plaintiffs any intention of demanding from them an all-cash payment instead.

- Self-funded plans have recovered approximately $800 million a year via cross-plan offsetting in each year between 2018-2020, amounting to 81-85% of their overpayments. AC ¶ 64.

## ARGUMENT

ERISA fiduciary breach actions are appropriately dismissed at the pleading stage if the complaint fails to establish (1) that the plaintiffs have standing or (2) that the defendants were fiduciaries for the complained-of conduct. *See, e.g.*, *Ryan S. v. UnitedHealth Grp., Inc.*, No. 20-56310, 2022 WL 883743, at *3 (9th Cir. Mar. 24, 2022) (complaint challenging cross-plan offsetting dismissed because plaintiff lacked standing); *McCaffree Fin. Corp. v. Principal Life Ins. Co.*, 811 F.3d 998, 1003-04 (8th Cir. 2016) (dismissal for lack of fiduciary status affirmed).

## I. PLAINTIFFS LACK STANDING

The Opposition does not suggest that plaintiffs are at risk (imminent or otherwise) of being invoiced for amounts their providers were paid via the challenged offsets. Rather, the Opposition makes five other arguments in support of standing:

3

1.  Plaintiffs' "benefit claims were not paid in compliance with federal law." Opp'n at 2.

2.  Fiduciary duty claims come with standing *per se*, with "no further inquiry" into whether the breach caused harm. *Id*. at 22-23.

3.  Plaintiffs have standing by analogy to breach of contract because their "plans owed them (collectively) nearly $56,000 in benefits." *Id.* at 1.

4.  The mere possibility that their providers could bill them creates a "cloud" on plaintiffs' accounts. *Id*. at 19.

5.  Payment of their doctors in cash rather than via debt forgiveness is "inherently" more valuable to plaintiffs and thus what they "want." *Id*. at 12, 20; AC ¶ 66.[2]

None of these arguments establishes standing. They are all either inconsistent with the allegations in the Complaint, directly contrary to governing law, or both.

***Unlawful Conduct.*** The mere allegation that a defendant acted unlawfully toward plaintiffs does not establish standing. In order to bring an action in federal court, Plaintiffs must allege that they were **harmed** by the alleged illegality. *TransUnion*, 141 S. Ct. at 2212; *Thole v. U.S. Bank, N.A.*, 140 S. Ct. 1615 (2020); *Ojogwu v. Rodenburg Law Firm*, 26 F.4th 457, 462-464 (8th Cir. 2022).

---

[2] In a footnote, plaintiffs also assert "informational injury" on the grounds that the EOBs received by plaintiffs did not disclose the offsets. Opp'n 21 n.10. But an "asserted informational injury that causes no adverse effects cannot satisfy Article III." *TransUnion LLC v. Ramirez,* 141 S. Ct. 2214 (2021). The Complaint does not allege any adverse effects, but admits that notice of the offsets went to the providers, the very parties whose claims were settled by the offsets, along with notice of their appellate options, which the providers exercised. AC ¶¶ 83-85, 92-93; Stalinski Decl., Exs. F at 6, H-J.

***"No Further Inquiry."*** Plaintiffs' argument that injury is presumed with alleged fiduciary breaches—*i.e.*, that there is "no further inquiry" into a plaintiff's injury, Opp'n at 22-23—is precluded by *Thole*. The *Thole* plaintiffs alleged breaches of ERISA fiduciary duties, yet the Court held their claims could not proceed without proof of concrete injury. The "no further inquiry" rule was a primary argument offered by the dissent, 140 S. Ct. at 1629-31 (Sotomayor, dissenting), but the majority opinion rejecting that rule is the law.

***Failure to Follow Plan Terms.*** Notwithstanding the assertions in the Opposition, the **Complaint** does not allege that United failed to follow the terms of the plans. The Opposition states that plaintiffs have standing by analogy to breach of contract because they "allege United agreed their plans owed them . . . $56,000 in benefits," which United failed to pay. Opp'n at 1. There is no such allegation in the Complaint. The Complaint does not (and cannot) allege that the plans entitled plaintiffs to fixed payments of cash—of any amount—independent of the plans' terms and conditions, but rather concedes that the amounts to be paid are expressly "subject to all terms and conditions of the policy." AC ¶ 78 (quotation omitted). Here, those "terms and conditions" include plan language expressly permitting payment of a provider's claims for benefits through cancellation of that provider's identified overpayment debt to any plan administered by United. Stalinski Decl. Exs. A at 98-99, B at 83 ("form of payment of benefits" under the policy included payment through offsets). Thus, while ERISA allows participants to make a contract-based claim for benefits under § 502(a)(1)(b), plaintiffs do not bring such a claim here because the facts alleged in the Complaint do not support a claim that the terms of the

5

plan were breached. Standing cannot be premised on a deprivation of contractual rights where, as here, the alleged wrongdoing is that defendants acted *in compliance with* the contract.

Plaintiffs' reliance on *Mitchell v. Blue Cross Blue Shield of North Dakota*, 953 F.3d 529 (8th Cir. 2020), is thus misplaced. Unlike plaintiffs, the Mitchells brought a contract claim under § 502(a)(1)(b) plausibly alleging that Blue Cross "fail[ed] to pay a healthcare provider in accordance with the terms of their benefits plan." *Id*. at 536. The Mitchells claimed that their plan entitled them to certain health care benefits and that Blue Cross failed to pay those benefits. The fact that they were not balance-billed was irrelevant because their harm was being deprived of the benefit of their bargain. *Id.* ("denial of benefits to which a plan participant is contractually entitled" is Article III injury because it deprives plaintiffs of "benefit of their bargain.").[3]

If the plaintiff sells Blackacre to the defendant via a contract that requires the defendant to pay the proceeds to the plaintiff's doctor, it's obvious that the plaintiff has standing to complain if no payment is made. Payment to the doctor was the consideration for the contract. That's *Mitchell*. But if the contract allowed payment to the doctor in cryptocurrency, and the doctor was paid in cryptocurrency, a plaintiff claiming that the contractually-permitted form of payment is somehow unlawful must show that he was concretely harmed by the asserted illegality; he cannot establish harm by invoking

---

[3] All of the cases cited in the Opposition following the *Mitchell* citation, Opp'n at 19-20, are irrelevant for the same reason: they address claims that a health plan breached its contract. Here, plaintiffs concede that payment by cross-plan offset was part of their contract.

6

"benefit of the bargain" because he received the contractually promised benefit. Here, plaintiffs have not alleged any harm as a result of payment to their providers via debt forgiveness, and they cannot avoid that burden by invoking "benefit of the bargain" where that form of payment was expressly *part* of the bargain. Plaintiffs' "breach of contract" argument is thus not a breach of contract argument at all, but rather collapses into a repackaged "unlawful conduct" argument for which—as explained above—plaintiffs must identify harm that suffices under Article III.

*"Cloud" on Plaintiffs' Accounts.* Plaintiffs' suggestion that there is a "cloud" or taint on plaintiffs' accounts with their providers is simply an assertion that there is a risk that plaintiffs' providers may one day pursue them for an all-cash payment. Like all claims of a risk of future harm, this allegation—which relies on contingent future actions by third parties—cannot create standing unless "the threatened injury is 'certainly impending' or there is a 'substantial risk' that the harm will occur." *In re SuperValu, Inc.*, 870 F.3d 763, 769 (8th Cir. 2017) (quotation omitted) (plaintiffs whose financial information was "hacked" did not have standing to challenge defendant's failure to properly secure the information because plaintiffs did not establish "substantial risk" that they would suffer identity theft); *see also TransUnion*, 141 S. Ct. at 2212 (risk of future harm from credit bureau's erroneous designation of plaintiffs as terrorists or other serious criminals did not support Article III standing in absence of "serious likelihood" that designations would be disclosed). Plaintiffs here do not assert that there is a "substantial risk" that their providers will seek an all-cash payment from them or that a balance bill is "certainly impending." Instead, they offer semantics—the notion that the possibility of

7

balance billing "constitutes a present, existing injury" because they do not have a "clear, settled account" with their providers. Opp'n at 19. But those semantic "clouds" are no different than the "potential terrorist" designation sitting in TransUnion's database, or the stolen financial information sitting in the database of the *SuperValu* hackers. In fact, the *SuperValu* plaintiffs had a stronger injury argument than plaintiffs here, in that they had incurred actual costs to mitigate the risks of identity theft, which nevertheless did not suffice because their threat of future injury was "speculative." *SuperValu*, 870 F.3d at 771. *See also Ryan S.*, 2022WL 883743, at *3 (plaintiff lacked standing to challenge cross-plan offsetting where sole harm alleged was that he remains "responsible" for the bills).

      Plaintiffs do not suggest that there is any likelihood that any ***action*** will be taken against them as a result of the asserted "cloud," and the allegations of the Complaint make clear that that is highly unlikely. The Complaint accepts that United furnished the providers a statement of a "clear, settled account" based on a form of payment that is expressly blessed by the terms of the plans, and which providers routinely accept. The Complaint offers no reason to believe that these providers will do what no other provider identified in the Complaint has done, following billions of dollars of such payments: pursue the patient demanding an all-cash payment instead.

      ***The Comparative Desirability of Cash***. Finally, plaintiffs' assertions that they "want" their doctors paid in cash rather than via offsets, and that payment in cash is "inherently" more valuable because "cash is king" (a close variant of their "cloud" argument), Opp'n at 12; AC ¶ 66, does not distinguish this case from innumerable other

8

cases (including *Thole* and *TransUnion*) in which the mere contravention of plaintiffs' preferences was held insufficient to create standing. It is "inherently" better to have a clean record at a credit reporting agency rather than a "potential terrorist" designation, and any consumer would "want" that. And any pensioner would regard it as "inherently better" to have a well-managed pension plan than one in which mismanagement had cost the plan $750 million, as alleged in *Thole*. But mere preferences are not enough to permit invocation of federal judicial power under Article III.

## II. THE COMPLAINT DOES NOT ADEQUATELY ALLEGE THAT UNITED ACTED AS A FIDUCIARY WHEN APPLYING THE CHALLENGED OFFSET PROTOCOL

### A. The Discretion United Allegedly Exercises is not the Subject of the Complaint

A lawsuit alleging breach of ERISA fiduciary duty and prohibited transactions must allege that the defendant acted with the discretion required to establish a fiduciary relationship "***when taking the action subject to complaint***." *McCaffree*, 811 F.3d at 1002 (quoting *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000)). It is not enough to allege that the defendant acted with discretion; the allegedly discretionary decision must be the one the plaintiff is complaining about. *Id.* at 1002-04.

This is one of the express holdings of *McCaffree*. McCaffree alleged that the defendant charged excessive fees to plaintiff's plan. To support its fiduciary status allegations, McCaffree alleged that the defendant exercised a variety of discretionary powers, all of which had something to do with fees, such as "winnowing down" the available investment options and "passing through operating expenses." *Id.* at 1003-04.

9

Those allegations were insufficient to establish fiduciary status, however, because the exercise of those discretionary powers was not the alleged wrongdoing. Similarly, the allegation that the defendant had "discretion to increase [certain] fees" did not suffice because there was no allegation that the defendant "exercised this authority or that any such exercise resulted in the allegedly excessive fees." *Id*. at 1003-04. *See also Santomenno v. John Hancock Life Ins. Co.*, 768 F.3d 284, 296-97 (3d Cir. 2014) (discretion to alter fees insufficient to establish fiduciary status where complaint was that original fees were excessive); *Leimkueler v. Am. United Life Ins. Co.*, 713 F.3d 905, 913 (7th Cir. 2013), *cert. denied*, 134 S. Ct. 1280 (2014) (discretion over management of accounts insufficient where plaintiffs' complaint concerned other actions); *Haley v. Teachers Ins. & Annuity Ass'n*, 17-CV-855 (JPO), 2018 WL 1585673, *8 (S.D.N.Y. Mar. 28, 2018) (alleged discretion does not establish fiduciary status where not the subject of complaint).

     Plaintiffs assert that United's cited cases were decided on other grounds. Opp'n at 27-28. But, as set forth above, each of those cases did allege that the defendant was authorized to exercise discretion, and, regardless of what additional grounds supported dismissal, each opinion—including *McCaffree*—expressly concluded that the allegations of discretionary powers did not suffice to plead fiduciary status because the actions complained of were distinct and non-discretionary.[4] This principle of law is settled: in

---

[4] Plaintiffs assert that *McCaffree* did not allege discretionary actions, but rather only actions that were contractually predetermined. Opp'n at 27-28. Some of *McCaffree's* allegations concerned actions that were contractually predetermined, but the allegations

10

"every case charging breach of ERISA fiduciary duty" the Court must determine whether the defendant was acting as a fiduciary "when taking the action subject to complaint." *Pegram*, 530 U.S. at 226.

Plaintiffs do not allege that United made the specific decision—enrolling plaintiffs' plans in cross-plan offsetting—that they claim was wrongful. Rather, plaintiffs claim that United had discretionary authority in the "administration" of cross-plan offsetting, *e.g.*, "over when and how offsets would be taken" and "whether a cross-plan offset should be taken in any individual instance." Opp'n at 25. United denies that these were discretionary decisions,[5] but the key point for this motion to dismiss is that ***none of those decisions are the subject of this complaint***. That is, plaintiffs do not allege that any breach of fiduciary duty occurred in the selection of Smith's payment for offset, or in the timing or amount of that offset. Nor do they complain that any specific aspect of United's process transgresses ERISA apart from plaintiffs' insistence that cross-plan offsetting is prohibited entirely. Indeed, the fact that this Complaint is purportedly a class action challenging every offset made from every self-funded plan, AC ¶ 97, makes plain that the action subject to complaint is the decision to use cross-plan offsetting at all, not

---

discussed at 811 F.3d 1003-04 were expressly discretionary, and did not suffice because they were not the actions subject to complaint.

[5] There is no allegation that United actually ***exercised*** any discretion over the "when," "how" and "who" of its process, as opposed to mechanically following the procedures set forth in the Disclosure. Jacob Decl. Ex. A at 6. Indeed, the allegations are to the contrary: the Complaint alleges United applies those procedures "in an identical" and "uniform" way, AC ¶¶ 96, 104, meaning that plaintiffs are not in fact challenging any exercise of discretion.

11

the "when," "how" and "whether" of any particular offset. And the decision to use cross-plan offsetting—the action subject to complaint—was made by the plans, not United.

### B. United is Not a Fiduciary as to the Decision to Employ Cross-Plan Offsetting Because the Practice Conformed to Specific Contract Terms and Could be Freely Rejected by Plan Sponsors

Eighth Circuit law establishes that "a service provider [will not be found to have acted] with the 'discretion' required to establish a fiduciary relationship if its actions (1) conform to specific contract terms, or (2) can be freely rejected by the plan sponsor." *Cent. Valley Ag. Coop. v. Leonard*, 986 F.3d 1082, 1087 (citing *Rozo v. Principal Life Ins Co.*, 949 F.3d 1071, 1074 (8th Cir. 2020)). As explained in United's opening brief, the decision to employ cross-plan offsetting satisfies both criteria.[6] Cross-plan offsetting concededly conforms to specific contract terms in the SPDs and ASAs.

Plaintiffs appear to argue that cross-plan offsetting could not be "freely rejected" by plans because United "pressured" and "misled" them. Opp'n at 25-26. But the only facts alleged in these cited paragraphs concern the Disclosure, and, as the Disclosure is incorporated in the Complaint, AC ¶¶ 32-34, the Court can easily satisfy itself that plaintiffs' protests are unsupported conclusions. Among other things, the Disclosure

---

[6] In a last-ditch effort to avoid the *Central Valley/Rozo/McCaffree* standards, plaintiffs argue in a footnote that a service provider can be liable for prohibited transactions notwithstanding its conformity to specific contract terms, citing *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409 (2014). Opp'n at 26 n. 12. *Dudenhoeffer* says nothing about whether a service provider acts with the necessary discretion to become a fiduciary. In fact, it does not address the question of whether a party is a fiduciary at all. To the contrary, the defendant in that case—the plan sponsor—was unquestionably a fiduciary as to the action subject to complaint. By contrast, the question here is whether plaintiffs have adequately alleged that United is a fiduciary with respect to the challenged decision.

12

cites the *Peterson* decision, by name and date; notes that there are "legal risks" associated with cross-plan offsetting; and explains that United benefits from the practice. Jacob Decl. Ex. A at 3-7. Plaintiffs' suggestion of "misrepresentation" thus boils down to the notion that the Disclosure could have contained more detail about *Peterson* and referenced the DOL's brief.[7]

Inability to freely reject is a high bar, however. Numerous cases have held that, so long as the plan retains the ability—without penalty—to reject the service provider's offering, the service provider is not a fiduciary as to the plan's decision to accept. In many of these cases, rejection would have required the plans to undergo the onerous process of selecting and transferring to a new service provider, yet the plan was deemed to be able to freely reject, such that the service provider was not a fiduciary. *See, e.g.*, *Santomenno*, 768 F.3d at 295; *Leimkuehler*, 713 F.3d at 912. By contrast, impediments to the ability to freely reject have been found only in cases where the rejecting plan would have incurred a material financial penalty or been locked into a contract with the service provider for a substantial period of time. *See, e.g.*, *Rozo,* 949 F.3d at 1075; *see also Teets v. Great-W. Life & Annuity*, 921 F.3d 1200, 1232, 1245-46 (10th Cir. 2019) (collecting cases) ("Fiduciary status turns on whether the service provider can ***force*** plans or participants to accept its choices") (emphasis added). Nothing even close to those kinds of impediments is alleged here.

---

[7] The vacuousness of plaintiffs' argument is highlighted by their objection to the Disclosure's statement that, if the plan declines cross-plan offsetting, it will not be able to obtain offsets from other plans. AC ¶ 36. That is simply definitional.

13

Plaintiffs' cited cases do not help them. In *Martin v. Feilen*, 965 F.2d 660, 669 (8th Cir. 1992), the defendants found to be fiduciaries were "insiders" whose involvement with the plan was so extensive as to amount to "effective control" over the plan, while in *Reich v. Lancaster*, 55 F.3d 1034, 1048-49 (5th Cir. 1995), the defendants were deemed to have effective control in light of the plan trustees' utter lack of sophistication. Neither plaintiff alleges that United was an "insider" that had "effective control" over her plan or that her plan trustees were incompetent.

### III. THE COMPLAINT DOES NOT PLAUSIBLY ALLEGE ERISA VIOLATIONS

Even if plaintiffs had standing and had sued a proper defendant, the Complaint would fail to state a claim. The thrust of plaintiffs' Opposition is that cross-plan offsetting violates ERISA because the practice is contrary to the plans' interests. But plaintiffs offer no support for that assertion, other than alluding to the risk of balance billing, which even plaintiffs do not suggest is likely to occur. What plaintiffs do say is that self-funded plans administered by United have recovered approximately $800 million a year via cross-plan offsetting between 2018 and 2020, amounting to 81-85% of their overpayments. AC ¶ 64. Plaintiffs note that—as United expressly disclosed—United also benefits, and in greater monetary amounts. But the collection of $800 million a year is an obviously compelling benefit that multitudes of self-funded plan fiduciaries have decided is in the interest of their plans. The harm would come from taking it away.

Plaintiffs also double down on allegations that cross-plan offsetting involves "self-dealing" or other conflicted transactions, and thereby transgresses ERISA. But each of

the plans participating in cross-plan offsetting independently elected to participate in the system because of the benefits it provides. The plans' independent officials were the decision-making fiduciaries, and there is no allegation that they engaged in self-dealing in doing so.

*Rozo v. Principal Life Ins. Co.*, 48 F.4th 589, 597 (8th Cir. 2022) (*Rozo II*), held that it does not violate ERISA for a plan and a fiduciary to have a "shared interest" in a practice. This is consistent with decades of DOL opinions supporting cooperative arrangements from which plans mutually benefit. Moreover, it is a basic principle of statutory construction that, where possible, statutes are interpreted to avoid unnecessarily harsh and unreasonable results. *United States v. Am. Trucking Ass'ns*, 310 U.S. 534, 543 (1940). Plaintiffs' interpretation of the statute ignores the language of the statute and these principles.

Dated:  December 15, 2022  DORSEY & WHITNEY LLP

By   s/ *Michelle S. Grant*
 Stephen Lucke (#154210)
 lucke.steve@dorsey.com
 Michelle S. Grant (#311170)
 grant.michelle@dorsey.com
 50 South Sixth Street, Suite 1500
 Minneapolis, MN 55402
 Telephone:  (612) 340-2600
 Facsimile:  (612) 340-2868

 Gregory F. Jacob (*pro hac vice*)
 Brian D. Boyle (*pro hac vice*)
 **O'MELVENY & MYERS LLP**
 1625 Eye Street, NW
 Washington, DC 20006
 (202) 383-5300

15